## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10CV00166 AGF |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Robert Crawford was not disabled and, thus, not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1384f. For the reasons set forth below, the decision of the Commissioner shall be reversed and the case remanded for further consideration.

Plaintiff, who was born on September 16, 1969, filed his application for benefits on August 14, 2007, at the age of 38, alleging a disability onset date of January 1, 2004, due to various physical and mental impairments. After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on May 20, 2009. On July 15, 2009, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, including his past job working at a service station, and was not disabled under the Act. Plaintiff requested review by the Appeals Council of the Social Security

Administration, submitting new evidence.  The Appeals Council summarily stated that the new evidence did not provide a basis for changing the ALJ's decision, and denied the request for review.  Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ committed reversible error in failing to analyze the demands of Plaintiff's past job at the service station, in failing to base the RFC assessment on some medical evidence, in minimizing the effects of Plaintiff's obesity and mental impairments on his RFC, and in assessing Plaintiff's credibility.

## BACKGROUND

### Work History and Application Forms

On his Work History Report completed on September 25, 2007, Plaintiff indicated that he had worked at various low-paying jobs for short intervals from 1994 to 2002.  One of these jobs, which Plaintiff held from 1994 to 1995, was listed as "Cashier" at a gas station, but the description of the job included using a dolly to load stock on shelves, and lifting boxes of soda and candy to place on shelves, tasks which required frequent lifting of 25 pounds, occasional lifting of 50 pounds, and stooping three hours in an eight-hour workday. Most of Plaintiff's other past work had similar physical requirements.  (Tr. 115-22.)

Plaintiff wrote in his Function Report dated October 1, 2007, that he had difficulty with lifting, walking, and other physical activities, and sometimes did not feel like doing anything but sit around.  He wrote that the only medication he was taking on a regular basis was aspirin, and that he was also supposed to be taking Plavix (used to prevent strokes and

2

heart attacks), Wellbutrin (an antidepressant), and a diet pill, but did not have the money to

fill prescriptions for those medications.  He indicated that he could pay bills, count change,

handle a savings account, and use a checkbook.  He also wrote that he had no problem

getting along with family, friends, or authority figures.  (Tr. 124-31.)

The record includes the notes from the agency employee who spoke to Plaintiff over

the telephone when he filed his application.  She noted that Plaintiff was very polite and had

no problem talking, answering, understanding, or concentrating during the conversation.

(Tr. 101-02.)

**Medical Record**

Although Plaintiff alleged disability beginning January 1, 2004, SSI benefits are

payable only from September 2007, the month following the month in which he filed his

application.  *See* 20 C.F.R. § 416.335.   Prior medical records are appropriately considered

for background purposes.  On September 11, 2004, Plaintiff was admitted to the hospital

with pneumonia.  His diagnosis included hypertension, morbid obesity, unsteady gait, and

hyponatremia, with no evidence of deep venous thrombosis.  (Tr. 159-62.)  On May 17,

2007, Plaintiff  presented to a medical center for a psychological evaluation to help "get off

street drugs."  He was in no pain, ambulated independently, and was admitted for treatment

for cocaine abuse.  Plaintiff's Global Assessment of Functioning ("GAF")[1] was 45 on

---

[1]     A GAF score represents a clinician's judgment of an individual's overall
ability to function in social, school, or occupational settings, not including impairments
due to physical or environmental limitations.  Diagnostic & Statistical Manual of Mental
Disorders (4th ed.) (DSM-IV) at 32.  GAF scores of 31-40 indicate "[s]ome impairment

admission and 65 upon release on May 19, 2007.  (Tr. 185-89.)

On July 23, 2007, state consultant Price Gholson, Psy.D., examined Plaintiff and opined that he had depressive disorder and social phobia, with a GAF of 60.  In check-box format, Dr. Gholson indicated both that Plaintiff did not have a mental and/or physical disability which prevented him from working, and also that the duration of Plaintiff's disability/incapacity was expected to last four to six months.  (Tr. 208-09.)

Also on July 23, 2007, state consultant Benjamin Mozle, M.D., conducted a physical examination of Plaintiff.  Dr. Mozle's notes are somewhat illegible, but indicate that Plaintiff was morbidly obese at 6' 4" and 422 pounds, had dyspnea upon walking 50 yards, severe peripheral vascular disease, metabolic syndrome, vericose veins, questionable obstructive sleep apnea, with normal pulmonary function, and no limitations in the ability to walk, stand, stoop, and grasp.  In check-box format, Dr. Mozle opined that Plaintiff was permanently disabled.  (Tr. 223-24.)

On October 12, 2007, James Spence, Ph.D., completed a Psychiatric Review Technique form, stating that Plaintiff had depressive disorder that was medically determinable and that resulted in no more than mild functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or

---

in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment.

pace.  Dr. Spence opined that Plaintiff's mental impairment did not significantly interfere with work-related functions, and was thus "non-severe."  (Tr. 227-37.)

On December 12, 2007, Plaintiff was treated at a health clinic for complaints of shortness of breath and chest pain.  He was diagnosed with obstructive sleep apnea, COPD, pre-diabetes, and coronary artery disease.  (Tr. 243.)  Plaintiff continued to be treated at the clinic for wheezing, lower extremity edema, varicose veins, obstructive sleep apnea, chronic obstructive pulmonary disease, hypertension, morbid obesity, and peripheral venous insufficiency.  He was assessed with anxiety and depression.  (Tr. 255-301.)

On January 16, 2008, a sleep study showed severe obstructive sleep apnea.  CPAP titration was recommended as well as evaluation of sleep hygiene and medications, weight loss, and smoking cessation.  (Tr. 246-47.)  Plaintiff was seen at a clinic for an initial visit on February 5, 2008, stating that he was depressed and not feeling well.  He did not feel like doing anything, even making meals for himself.  Bilateral lower extremities were swollen and red, "with very large varicose veins," for which surgery had been discussed with Plaintiff.  (Tr. 250.)

**Evidentiary Hearing of May 20, 2009**

Plaintiff testified that he was 39 years old, single, lived alone in an apartment, and had a high school education.  He could read and write and do basic adding and subtracting.  He testified about the various low-paying jobs he had held in past years, including his work in 1994 at a gas station convenience store stocking shelves, cleaning, and doing cashier work.  Plaintiff stated that he could no longer work full time due to problems with his legs,

shortness of breath.  He also noted that he had dizziness, sleep apnea, COPD, congestive

heart failure, and morbid obesity, with a current weight of 420 pounds.

Plaintiff testified that he took medication for cholesterol and blood pressure, aspirin,

Prozac, pain pills for his legs, and Ambien for sleep, and used a CPAP machine and

nebulizers.  He had difficulty sleeping because of cramping in his legs.  He could stand for

only about 20 to 30 minutes before needing to elevate his legs for about an hour to get to a

point where he could stand again.  His left leg was swollen all the time and he had

discolorations in his legs and fingers.  Sitting also aggravated his symptoms and swelling.

He could walk only two blocks before experiencing shortness of breath.  He did not do

housekeeping, cooking, or cleaning.  He received home health care seven days a week, two

hours per day, and these workers performed the household chores.

Plaintiff's daily activities consisted of sitting on the couch watching TV or listening

to the radio with his feet propped up.  He no longer hunted or went fishing.  Plaintiff had cut

back on his smoking to two cigarettes in the morning.  In spite of this, he still had trouble

with his breathing.  He had difficulty bending over to pick up objects, and could not

consistently bend, stoop, or crouch.  His hands swelled, and use of tools would aggravate

the problem.  He has also experienced numbness in his right hand.  Plaintiff's income

consisted of food stamps.  He had a Medicaid card, and his brothers and sisters paid his rent

and utilities.

**ALJ's Decision of July 15, 2009**

The ALJ found that Plaintiff had the severe impairments of morbid obesity, cocaine

6

abuse, hypertension, obstructive sleep apnea, COPD, peripheral venous insufficiency,

depression, and anxiety, but that none of these impairments, singly or in combination, met

or medically equalled the severity criteria of any of the deemed-disabling conditions listed

in the Commissioner's regulations.  The ALJ next found that Plaintiff had the RFC to

perform light work as that term was defined in the Commissioner's regulations,[2] except for

performing more than simple activity.[3]

     In support of this RFC assessment, the ALJ stated that Plaintiff's allegations about

the intensity and limiting effects of his impairments were not credible, in light of Plaintiff's

sporadic work history prior to his alleged onset of disability, Plaintiff's daily activities and

ability to live and function independently, his abuse of illicit drugs during his alleged period

of disability, his need for only "minimal or conservative" treatment, and the lack of strong

prescription pain or respiratory medication.

_____

[2]   "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves
lifting no more than 20 pounds at a time with frequent lifting or carrying of up to ten
pounds; and that might require a good deal of walking or standing, sitting most of the
time, and some pushing and pulling of arm or leg controls.  Social Security Ruling (SSR)
83-10, 1983 WL 31251, at *6, elaborates that the full range of light work requires
standing or walking, off and on, for a total of approximately six hours of an eight hour
work day, while sitting may occur intermittently during the remaining time; that the
lifting requirement for the majority of light jobs can be accomplished with occasional,
rather than frequent, stooping; and that many unskilled light jobs are performed primarily
in one location, with the ability to stand being more critical than the ability to walk.

[3]   The ALJ articulated other "exceptions" -- namely lifting and carrying more
than 20 pounds occasionally and ten pounds frequently, and standing or walking more
than six hours in an eight-hour workday -- but these limitations are encompassed in the
regulations' definition of light work.

The ALJ recognized that Plaintiff's obesity "exacerbate[d]" his other medical conditions and imposed "significant limitations with mobility and stamina," but the ALJ added that physical examinations revealed that Plaintiff had a normal gait and was able to ambulate independently.  In addition, according to the ALJ, there was no evidence of significant joint or spine abnormality, range of motion limitation, muscle atrophy or spasm, bladder or bowel dysfunction, neurological deficits, or end organ dysfunction.  Further, according to the ALJ, Plaintiff's hypertension, COPD, and lower extremity edema/venous insufficiency were all generally controlled.

The ALJ observed that Plaintiff did not appear in any "obvious credible physical or mental discomfort" during the evidentiary hearing.  The ALJ gave "no weight" to Dr. Mozle's July 23, 2007 assessment that Plaintiff was permanently disabled, because the ALJ believed the assessment was inconsistent with Dr. Mozle's own "essentially unremarkable" physical exam; with the objective medical evidence of record, which the ALJ did not specify; with the conservative medical treatment provided to Plaintiff; and with Plaintiff's daily activities.  The ALJ also noted that the determination of whether a claimant was disabled was a matter for the ALJ.

The ALJ found that Plaintiff had the severe mental impairment of substance addiction disorder, consisting of "cocaine abuse with related depressive and anxiety disorders," but that these problems caused only mild limitations in activities of daily living and social functioning, and moderate limitations in maintaining concentration, persistence, or pace.

Based on his RFC assessment, the ALJ found that Plaintiff could perform his past

8

work as a service station cashier, which, according to the Dictionary of Occupational Titles ("DOT"), is an unskilled, light exertional level occupation.  The ALJ concluded that Plaintiff was therefore not disabled, even considering his substance abuse, as of August 14, 2007, the date his application for SSI was filed.

**New Evidence Presented to the Appeals Council**

A medications list completed by Plaintiff on June 28, 2010, showed that he was taking Lovaza and Trilipix for cholesterol, Metmorfin for diabetes, Naspan for heart and cholesterol, Singulair and Loratidine for respiratory problems, Alprazolam for anxiety, Tektrum and Drovan for high blood pressure, and Hydrocodone and Aspirin for pain.  (Tr. 303.)

Plaintiff also submitted to the Appeals Council medical records documenting his monthly follow-up and medication refill visits to the health clinic from June through September 2009, and a Medical Source Statement-Physical completed on January 11, 2010, by Patrick Drummond, a nurse practitioner at the clinic.  The medical records indicate that Plaintiff continued to suffer from his chronic conditions, including joint pain and/or back pain and COPD, and received refill prescriptions for his medications, hydrocodone, Klonapan, and Lasix.  The notes also indicate that Plaintiff had no sensory deficit, neurologically; and normal insight, judgment, and memory, psychologically.  (Tr. 308-18.)

Nurse Drummond indicated on the Medical Source Statement that from December 10, 2009, onward Plaintiff could not lift/carry ten pounds even occasionally; could stand/walk up to one to two hours in a day and continuously less than one hour; could sit for

9

a total of eight hours in a day; had limited ability to push/pull; could never climb, balance, stoop, kneel, crouch, bend, or reach, and could only occasionally handle, finger, feel, see, hear or speak.  Plaintiff had environmental restrictions due to obesity and COPD from dust and irritants, new onset of diabetes, a poorly healing ulcer to right lower extremity, chronic lower knee pain, anxiety, hypertension, high lipids, and other cardiovascular risk factors. (Tr. 304-05.)

As noted above, the Appeals Council summarily stated that the new evidence did not provide a basis for changing the ALJ's decision, and denied Plaintiff's request for review.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." *Johnson v. Astrue*,  628 F.3d 991, 992 (8th Cir.  2011).  The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (explaining that the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in

substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). A special technique is used to determine the severity of mental disorders which calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. Otherwise, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work as he performed it or as it is generally performed in the national economy. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational

11

factors -- age, education, and work experience.  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

In addition, when the Appeals Council "has considered new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence."  *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000) (quoted source omitted).

## ALJ's Analysis of Plaintiff's Past Work

Plaintiff first argues that the ALJ did not properly consider Plaintiff's past work in 1994 to 1995.  The Court agrees.  In determining whether a claimant can perform his past relevant work, an ALJ must compare the limiting effects of the claimant's impairments with the demands of such work.  *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (citing *Groeper v. Sullivan*, 932 F.2d 1234, 1239 (8th Cir. 1991)); *Kirby v. Sullivan*, 923 F.2d 1323, 1327 (8th Cir. 1991).

While the ALJ also may consider the requirements of jobs as set forth in the DOT, 20 C.F.R. § 416.960(b)(2), the ALJ must of course correctly identify what the claimant's past work was.  *Evans v. Shalala*, 21 F.3d 832, 835 (8th Cir. 1994).  Here, the ALJ characterized the job Plaintiff performed in 1994 as cashier, but this is at odds with Plaintiff's description of the job in both his Work History Report and his testimony at the hearing, as a job with both shelf-stocking and cash register duties.  As such, the ALJ's decision that Plaintiff was not disabled because he could perform work he did, for perhaps one year, in 1994 to 1995, is not supported by substantial evidence in the record.  *See id.* (holding that the decision that

12

the claimant was not disabled based on his ability to do past relevant work was not

supported by substantial evidence where the ALJ's decision was "based on an inapposite

portion of the DOT").  Therefore, the ALJ's decision must be reversed and the case

remanded for further proceedings.  *See id.* (remanding case for testimony by a vocational

expert as to what kinds of work are available in the national economy which realistically

suited the plaintiff).

**ALJ's Assessment of Plaintiff's RFC and Credibility**

On remand, the ALJ should reconsider the assessment of Plaintiff's physical RFC,  in

light of the new evidence submitted to the Appeals Council.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**

and the case **REMANDED** for further consideration.

A separate Judgment shall accompany this Memorandum and Order.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of February, 2012.